UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARTIS SPECIALTY INSURANCE CO., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1527 |
| | § | |
| JSW STEEL (USA), INC., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court are plaintiff Chartis Specialty Insurance Company's ("Chartis")

motion for summary judgment (Dkt. 20), defendant JSW Steel Inc.'s ("JSW") motion for partial

summary judgment (Dkt. 22), JSW's motion to abate (Dkt. 23), and Chartis's motion to strike (Dkt.

29). After considering the motions, responses, and applicable law, the court finds that Chartis's

motion for summary judgment (Dkt. 20) should be GRANTED IN PART and DENIED IN PART,

JSW's motion for summary judgment (Dkt. 22) should be DENIED, JSW's motion to abate (Dkt.

23) should be GRANTED, and Chartis's motion to strike (Dkt. 29) should be DENIED AS MOOT.

## I. BACKGROUND

In this case, an insurer, Chartis, seeks a declaration that it does not owe indemnity or defense

for an underlying lawsuit against its insured, JSW. Dkt. 1 at 1. Chartis issued commercial general

liability and commercial umbrella policies to JSW in September 2010. Dkt. 20 at 7-8. Among other

things, the policies provide coverage for "personal and advertising injury," which includes "oral or

written publication, in any manner, of material that slanders or libels a person or organization or

disparages a person's or organization's goods, products or services." Dkt. 20-3 at 49. However, the

policy excludes (1) "personal and advertising injury caused by or at the direction of the insured with

the knowledge that the act would violate the rights of another and would inflict personal and advertising injury," (2) "personal and advertising injury arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity," and (3) "personal and advertising injury arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement." Dkt. 7-1 at 11.

On April 19, 2012, MM Steel filed an original complaint alleging that JSW and others arranged a "group boycott" to drive MM Steel out of business (the "Underlying Lawsuit"). Dkt. 1-1. MM Steel's original complaint included claims for violation of the Sherman Act, breach of contract, tortious interference, business disparagement, and conspiracy. Dkt. 20 at 9. JSW tendered the Underlying Lawsuit to Chartis for defense and indemnity. *Id.* Chartis maintained that the only potentially covered claim was MM Steel's claim for business disparagement. *Id.* Even though the original complaint did not contain allegations that JSW made any disparaging statements, Chartis agreed to defend JSW in the Underlying Lawsuit with a full reservation of rights. *Id.* Prior to trial, MM Steel abandoned all of its state law claims against JSW except for breach of contract. *Id.*

On March 25, 2014, the jury returned a verdict in MM Steel's favor on its antitrust and breach of contract claims against JSW. *Id* at 10. MM Steel advised the court that it did not intend to pursue recovery of its breach of contract verdict, and the court entered a final judgment in the Underlying Lawsuit against JSW and its co-defendants for $156 million. *Id.* Following judgment, JSW turned to Chartis for indemnity and post-verdict defense costs while the Underlying Lawsuit is on appeal. *Id.* Chartis denied coverage because the verdict rendered against JSW was for claims that were not covered by the Chartis policies. *Id.* Chartis then filed this lawsuit seeking a declaration that it has no duty to defend JSW on appeal or indemnify JSW for the judgment. JSW

2

presented breach of contract claims for Chartis's failure to defend and indemnify JSW.  JSW and Chartis now both move for summary judgment.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

### A. Duty to Defend

Under Texas law, courts follow the "eight corners" rule to determine whether a party has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999).  "Under this rule, courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether *any* claim asserted in the pleading is potentially within the policy's coverage." *Id.*  "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004).  All doubts with regard to the duty to defend are resolved in favor of the duty. *Id.*  Courts applying the eight corners rule "give

3

the allegations in the petition a liberal interpretation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*

*v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

JSW argues that the court should consider the original complaint in the Underlying Lawsuit

in conducting its analysis.  Dkt. 24 at 19-20.  However, none of the allegations concerning JSW in

MM Steel's original complaint in the Underlying Lawsuit trigger coverage under the policy.  MM

Steel alleges that several of its competitors convinced JSW to breach the contract between MM Steel

and JSW by refusing to sell steel to MM Steel.  According to the original complaint:

> at a meeting in October 2011, JSW's President, Mike Fitch, and Rajesh Khosla, a
> JSW salesman, told Plaintiff MM Steel that JSW would no longer honor its contract.
> This was because, according to Fitch, multiple persons had made "unsolicited" visits
> to JSW to disparage Hume, Schultz[1], and MM Steel.  Because of those unsolicited
> visits, JSW cut off supply to MM Steel.  Hume told Fitch that he was effectively
> putting MM Steel out of business.  When Hume told Fitch that he (Hume) sensed
> Fitch and JSW had been threatened, Fitch's only response was this: "I understand the
> gravity of the situation," but "I have to do what's best for my business."  The end
> result was that despite an existing contract and an established business relationship
> with Hume and Shultz, JSW was going to enter into a conspiracy to shut down MM
> Steel, not to mention breach its contract.  Plaintiff has recently learned that
> Defendants Alloy and Moore threatened JSW.

Dkt. 20-7 at 15-16.  These are the only facts alleged against JSW, and they are excluded from

coverage, as analyzed below.  The complaint also contains the following allegations applicable to

all defendants:

> Defendants published disparaging words about Plaintiff MM Steel's economic
> interests, and those words were false.  Defendants published the words with malice
> and without privilege.

> Defendant's tortious conduct caused Plaintiff MM Steel to suffer actual damages and
> other special damages.

*Id.* at 25.

---

[1] Hume and Shultz are the owners of MM Steel.  Dkt. 20-7 at 13.

4

While the policies at issue cover statements that disparage a person's or organization's goods, products or services, certain statements are excluded.  Dkt. 1 at ¶ 4.7.  Specifically excluded from coverage is "personal or advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury."  The complaint seems to allege that all of the disparagement was actually committed by parties other than JSW, and JSW's wrongdoing was limited to its breach of contract (also excluded from coverage) in aid of the conspirators' antitrust violations.  However, even if the disparagement were alleged against or imputed to JSW, it would not be covered as it was a knowing attempt to violate MM Steel's rights and inflict personal and advertising injury.  *See Burlington Ins. Co. v. Superior Nationwide Logistics, Ltd.*, 783 F. Supp. 2d 958, 964-65 (S.D. Tex. 2010) *aff'd* 427 F. App'x 299 (5th Cir. 2011) (finding that allegations of an organized campaign to destroy a competing business did not trigger a duty to defend where policy language was identical to the Chartis policy); *see also Rose Acre Farms, Inc. v . Columbia Cas. Co.*, 662 F.3d 765, 769 (7th Cir. 2011); *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135 (11th Cir. 2011).  Additionally, the policies exclude personal or advertising injury where the publication was made with knowledge of its falsity.  Dkt. 7-1 at 11.  The disparagement alleged in the complaint consists of false statements made with malice.  These allegations are clearly excluded from coverage.  Because the complaint alleges only knowing violations of MM Steel's rights and deliberate publication of false material, policy coverage is not implicated, and there is no duty to defend.[2]  Because Chartis has no duty to defend JSW in the Underlying Lawsuit, JSW cannot recover on its breach of contract claim predicated on Chartis's

---

[2] The conclusion is the same when the court considers the pre-trial order, which alleges basically the same facts, but asserts only antitrust claims.

5

failure to defend.  Likewise, JSW is not entitled to interest on any unpaid defense fees as alleged in JSW's counterclaim.  Dkt. 8 at 17–18.

**B.  Duty to Indemnify**

A decision on whether Chartis has a duty to indemnify is premature.  "Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'"  *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004) (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).  Although the evidence presented at trial and the findings of the jury do not appear to trigger coverage, the Underlying Lawsuit is on appeal, and this court finds it prudent to stay this action until the Underlying Lawsuit is fully and finally resolved.  Upon final resolution of the Underlying Lawsuit, the parties can move this court for a final determination on indemnity.

**C.  Motion to Strike**

Also before the court is Chartis's motion to strike an expert report submitted by JSW in support of its claim for breach of contract for failure to defend.  Because that claim is being dismissed by this order, the motion to strike is moot.

**IV. Conclusion**

Chartis has no duty to defend JSW in the Underlying Lawsuit.  However, a decision on the duty to indemnify is premature.  Accordingly, Chartis's motion for summary judgment (Dkt. 20) is GRANTED IN PART and DENIED IN PART, JSW's motion for summary judgment on duty to

defend (Dkt. 22) is DENIED, and JSW's motion to abate (Dkt. 23) is GRANTED.  Chartis's motion

to strike (Dkt. 29) is DENIED AS MOOT.  The remainder of this case is STAYED pending final

resolution of the Underlying Lawsuit.  JSW's claims for breach of contract based on a failure to

defend and interest on unpaid defense fees are DISMISSED WITH PREJUDICE.

     It is so ORDERED.

     Signed at Houston, Texas on July 8, 2015.

                               Gray H. Miller

                         United States District Judge